**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Suzie Rose,

               Plaintiff,

v.

Air Liquide USA LLC, et al.,

               Defendants.

No. CV-24-00539-PHX-MTL

**ORDER**

Before the Court are Defendants Air Liquide USA, Guidant Group and Guidant Global, and Icon Information Consultant's Motions to Dismiss Plaintiff Suzie Rose's Second Amended Complaint ("SAC"). (Docs. 38, 39, 40.) The Motions are fully briefed. (Docs. 43, 48, 49, 50.) The Court held oral argument on January 23, 2025. For the reasons that follow, the Court will grant Defendants' motions in part and deny them in part.

## I.    BACKGROUND

The following summary is taken from the allegations in the SAC, which the Court accepts as true for the purposes of assessing the pending motions. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### A.    The Parties

Air Liquide USA ("Air Liquide") is a subsidiary of a French corporation and works in industrial gas operations. (*See* Doc. 35 ¶¶ 9, 19.) It constructs gas facilities and supplies hydrogen, helium, and carbon dioxide to its customers. (*Id.* ¶¶ 19-20.) Guidant Group is a subdivision of Guidant Global (collectively, "Guidant"), and partners with different

staffing agencies, including Icon Information Consultants ("Icon"), to provide contingent workers for its clients, one of which is Air Liquide. (*Id.* ¶¶ 10, 22, 23, 41.) Icon is a staffing agency that operates as the W-2 employer for individuals who are then contracted out to various companies. (*Id.* ¶¶ 33, 41.)

Plaintiff Suzie Rose is a resident of Maricopa County, Arizona, who was employed by Defendants as an administrative assistant during the events giving rise to this action. (*Id.* ¶¶ 7-8.)

### B.    Factual Background

At the start of 2022, the Taiwan Semiconductor Manufacturing Company ("TSMC") contracted with Air Liquide to build a gas plant for its microchip factory development in Arizona. (*Id.* ¶ 20.) To assemble its workforce, Air Liquide entered into a master service agreement with Guidant, which would assist in hiring and managing contingent workers for the TSMC construction project. (*Id.* ¶¶ 23-24.) Under the terms of this agreement, Air Liquide and Guidant jointly employed Chuck White, the director of construction and hiring manager; Dick Hull, the construction site manager; Daniel Thompson, the civil construction site manager; and John Kysar, the gas plant manager. (*Id.* ¶¶ 28-30, 40, 79, 149, 151.)

#### 1.    Hired, Harassed, and Humiliated

In April 2022, Hull was tasked with hiring an administrative assistant to support Air Liquide's staff during the TSMC construction project. (*Id.* ¶¶ 20-21, 40.) Guidant asked Icon, its regular staffing company supplier, to provide a list of candidates for Hull to interview. (*Id.* ¶¶ 41, 43.) Plaintiff was contacted, scheduled for an interview, and ultimately selected for the position. (*Id.* ¶¶ 45-47.) Guidant then executed a contract with Icon to hire Plaintiff, and Plaintiff signed a one-year employment contract. (*Id.* ¶¶ 48, 50.)

Although Plaintiff was employed by Guidant, Air Liquide, and Icon, the employment contract itself provided that Icon was and would at all times be Plaintiff's employer of record and would serve as her employer for tax, human resources, benefits, complaints, and disciplinary matters. (*Id.* ¶¶ 52-53.) Plaintiff started work at the

construction site on June 6, 2022. (*Id.* ¶ 82.)

Plaintiff states she was first harassed by Thompson, her supervisor, on June 17, 2022, when she stated, "oh yeah, time to party!" and Thompson, in a tone laced with sexual innuendo, replied "we can party." (*Id.* ¶ 94.) This "shocked, offended, and embarrassed her," and she informed Thompson, "Not that kind of party." (*Id.*) Over the next two weeks, Thompson repeatedly "snuck up" behind Plaintiff and "aggressively poked/jabbed hard [at] the back of her neck, upper back[,] or elbowed hard her upper arm into her breasts causing them to shake," two or three times each day. (*Id.* ¶ 95.) Despite Plaintiff's requests that he stop, Thompson's behavior persisted and caused Plaintiff to feel pain and embarrassment. (*Id.*) Thompson also repeatedly asked Plaintiff to fist bump him. (*Id.*) Plaintiff alleges that Thompson did not poke, jab, or fist bump other employees, and she "felt overwhelmed by his daily touching and believed it was of a sexual nature." (*Id.*)

During this time, Thompson also made sexually inappropriate comments to Plaintiff. (*Id.* ¶ 96.) These comments concerned: (1) Thompson's sexual relationship with his girlfriend; (2) the house Thompson rented, which he stated Plaintiff could not visit because his girlfriend would be there; and (3) his interactions with "sexy Budweiser girls." (*See id.*) On one occasion, Thompson also yelled at Plaintiff in "what she perceived to be a sexually sadistic 'wife beater' face." (*Id.* ¶ 97.)

On July 21, 2022, Thompson held a closed-door meeting with Plaintiff to discuss her behavior and demand that "she do things 'his way.'" (*Id.* ¶¶ 101, 104.) During the meeting, Thompson "repeatedly intimidated, humiliated and harassed" Plaintiff; kept the door closed even when Plaintiff asked for it to remain open because she felt uncomfortable; dictated her responsibilities and modified her hours; and required her to fist bump him over ten times, causing her to feel "like she was a fist-bump hostage." (*Id.* ¶¶ 101-08.) After this meeting, Plaintiff reported Thompson's conduct to Hull, who told Plaintiff he would forward her complaints to Air Liquide and Guidant who would then tell Icon. (*Id.* ¶¶ 111-12, 116, 121.)

But Plaintiff alleges Thompson's unwelcome conduct progressed. (*Id.* ¶ 125.) A few

weeks later, Thompson and Plaintiff discussed their children. (*Id.* ¶ 133.) When Plaintiff told Thompson she adopted her bi-racial daughter, Thompson exclaimed, "she's a mutt! That's what everyone calls them, a mutt. Dark skinned? Their [sic] mutts!" (*Id.*) This insult deeply offended and distressed Plaintiff. (*Id.* ¶¶ 134-35.) She reported Thompson's conduct the following day in an email to Hull and Thompson. (*Id.* ¶ 136.) Hull forwarded Plaintiff's complaints to White—the hiring manager—and the human resources department. (*Id.* ¶¶ 137-38.) Thompson was terminated that same day, and Hull informed Plaintiff to work from home the next day for safety reasons because Thompson was upset. (*Id.* ¶ 147.)

Because Thompson was fired after Plaintiff reported his conduct, she asserts that Thompson's friends—including Kysar—retaliated against her. (*Id.* ¶¶ 150-61.) Kysar's retaliatory conduct included: (1) commenting that it was "disgusting" for Plaintiff to eat old donuts; (2) stating "people [are] losing their job around here for no reason;" (3) regularly giving Plaintiff "an expression of disgust;" and (4) calling Plaintiff an "insulting" and "unethical" person. (*Id.*) Plaintiff reported Kysar's conduct to Icon and Hull. (*Id.* ¶¶ 162-165.)

On August 30, a Guidant employee scheduled a meeting for the following day with Plaintiff, Icon, Hull, White, and other Air Liquide executives to address her retaliation complaint. (*Id.* ¶ 166.) But only Icon and Guidant representatives participated in this meeting with Plaintiff. (*Id.* ¶¶ 169-70.) Kysar's retaliatory conduct continued. (*Id.* ¶¶ 174-75.)

Plaintiff alleges that Air Liquide, Guidant, Hull, and White then concocted a scheme to "make up reasons to terminate" Plaintiff or "try to cause [her] to quit." (*Id.* ¶ 178.) This scheme required Hull to (1) lie to other employees that Plaintiff regularly arrived late to work and did not complete her work on time; (2) force her to work manual labor in an unairconditioned train cart during an Arizona excessive heat warning; (3) taunt her with fist bumps; and (4) scream at her in front of other employees and executives. (*Id.* ¶¶ 178, 180-91, 214-18.)

1

### 2.    Hustled Out and Hauled into Court

On September 13, 2022, Hull yelled at Plaintiff regarding the accuracy of a report that she confronted a coworker about. (*Id.* ¶¶ 206-14.) This incident traumatized Plaintiff, so she packed up her belongings and left work early to take personal time off. (*Id.* ¶¶ 221-23.) White followed her to her car and informed Plaintiff that she was not authorized to leave work early. (*Id.* ¶ 223.) In response, Plaintiff recounted the retaliatory conduct she had endured and explained that she was too distressed to work for the rest of the day. (*Id.* ¶¶ 223-29.) White asked Plaintiff whether she was certain she wanted to leave early, and after affirming her decision, he told her to drive home safely. (*Id.* ¶ 229.)

Around thirty minutes after Plaintiff left work, White and Hull requested that Plaintiff's Air Liquide email account be deactivated. (*See id.* ¶ 231.) Anticipating this response, Plaintiff downloaded her work product and forwarded thousands of work emails to herself (the "September 13th Download"). (*Id.* ¶¶ 232-33, 246.) Plaintiff sent a text message to Hull stating she would be suing everyone involved to prevent Defendants from spoliating any evidence. (*Id.* ¶ 239.) She also reported Hull and White's retaliation to Icon. (*Id.* ¶ 235.) No action was taken, and Icon informed Plaintiff that she should cease communication with both Icon and Air Liquide. (*Id.* ¶¶ 235, 240-41.)

While Plaintiff exhausted her administrative remedies in bringing this action, Air Liquide sent Plaintiff several emails and letters, threatening legal action and demanding that she destroy the work product contained in the September 13th Download. (*Id.* ¶¶ 242-58.) Despite informing Air Liquide on five separate occasions that she deleted the September 13th Download, Air Liquide sued Plaintiff in the Delaware District Court and sought a temporary restraining order to prevent her from misusing its confidential information and trade secrets. (*Id.* ¶¶ 255, 259.) The court held a hearing on February 9, 2023, where Plaintiff stated on the record that she deleted the September 13th Download. (*Id.* ¶¶ 262, 265.) Ultimately, the court denied Air Liquide's request for a temporary restraining order, and the case was dismissed without prejudice. (*Id.* ¶¶ 265-66.)

1

### C.    Procedural History

2      Plaintiff filed her complaint with this Court on March 14, 2024. (Doc. 1.) After

3  serving the complaint on all Defendants (Docs. 17, 18, 19, 20, 21, 22), Plaintiff filed an

4  amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1) (Doc. 24).

5      On June 30, 2024—nine days after Plaintiff filed her first amended complaint—

6  Plaintiff sought leave to file a second amended complaint under Rule 15(a)(2) to reorganize

7  and clarify her joint employer allegations. (Doc. 30.) Defendants did not oppose Plaintiff's

8  request. (Docs. 31, 32, 33.) The Court granted Plaintiff's motion (Doc. 34), and Plaintiff's

9  SAC became the operative pleading in this case (Doc. 35). Therein, Plaintiff asserts

10 seventeen counts against Defendants. (Doc. 35.) Defendants each filed a motion to dismiss

11 the SAC. (Docs. 38, 39, 40.) Plaintiff filed her Omnibus Response (Doc. 43), and

12 Defendants filed their replies (Docs. 48, 49, 50).

13 ## II.    LEGAL STANDARD

14     A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to

15 state a claim upon which relief can be granted "tests the legal sufficiency of a claim."

16 *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint "if

17 there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under

18 a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.

19 2011) (quotations and citation omitted).

20     A complaint must assert sufficient factual allegations that, when taken as true, "state

21 a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

22 (quotations and citation omitted). Plausibility is more than mere possibility; a plaintiff is

23 required to provide "more than labels and conclusions, and a formulaic recitation of the

24 elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

25 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations

26 are taken as true and construed in the light most favorable to the plaintiff. *Cousins v.

27 Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

28     In the Ninth Circuit, courts are directed to construe *pro se* pleadings "liberally and

1    to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th

2    Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).

3    Nonetheless, *pro se* litigants must comply with the same rules of procedure that govern

4    other litigants. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997).

5    **III.    DISCUSSION**

6        **A.    Title VII and Section 1981 Claims: Counts 1-11**

7        Plaintiff asserts claims under Title VII and Section 1981. (*See generally* Doc. 35.)

8    Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate

9    against any individual with respect to his compensation, terms, conditions, or privileges of

10   employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1).

11   When analyzing employment discrimination claims under Section 1981, a district court is

12   guided by Title VII analysis. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir.

13   2008); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797-98 (9th Cir. 2003) (explaining that

14   federal courts apply the same standards in Section 1981 actions as they do in Title VII race

15   discrimination cases).

16       **1.    Joint Employer**

17       Guidant argues Plaintiff's Title VII claims should be dismissed because Plaintiff

18   fails to allege that she was an employee of Guidant. (Doc. 39 at 5-6.)[1] Civil liability under

19   Title VII is limited to employers. *See* 42 U.S.C. §§ 2000e-2, 2000e-1(b), 2000e-5. But a

20   direct employment relationship is not required; rather, there need only be "some connection

21   with an employment relationship for Title VII protections to apply." *Ass'n of Mexican-Am.*

22   *Educators v. California*, 231 F.3d 572, 580 (9th Cir. 2000) (quoting *Lutcher v. Musicians*

23   *Union Loc. 47*, 633 F.2d 880, 883 (9th Cir. 1980)).

24       The Ninth Circuit uses the common law agency test to assess whether an entity is

25   an employer for Title VII liability purposes.[2] *U.S. Equal Emp. Opportunity Comm'n v.*

---

26   [1] For the purposes of its motion, Air Liquide concedes the SAC contains sufficient
27   allegations that it is her joint employer. (Doc. 38 at 3.) Icon also does not challenge its
     employer status under Title VII in its motion. (Doc. 40.)
28   [2] Guidant argues the "economic-reality" test applies, whereby, the court must consider
     whether the alleged joint employer: (1) supervised the employee, (2) had the power to hire
     and fire her, (3) had the power to discipline her, and (4) supervised, monitored and/or

*Glob. Horizons, Inc.*, 915 F.3d 631, 639 (9th Cir. 2019). "Under the common-law test, 'the principal guidepost' is the element of control—that is, 'the extent of control that one may exercise over the details of the work of the other.'" *Id.* at 638 (quoting *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003)). In assessing control, courts consider a non-exhaustive list of factors, including:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992).

Plaintiff alleges Air Liquide and Guidant entered into a master service agreement, whereby Guidant would hire and manage contingent workers at Air Liquide's various construction sites. (Doc. 35 ¶¶ 22-24.) According to Plaintiff, this agreement dictated the workers' (1) compensation, location of work, and hours; (2) hiring process; (3) interview and selection process; (4) training; and (5) various onboarding agreements, amongst other items. (*Id.* ¶ 25.) The agreement also "dictated the terms and conditions and controlled the contingent workers." (*Id.* ¶ 26.) Plaintiff also alleges "Guidant and Air Liquide installed permanent Guidant employees . . . to physically work full time within and under the supervision of the Air Liquide HR department and hiring managers" and required these employees to report to both companies. (*Id.* ¶ 27.) The SAC explains that Guidant hired and dictated the job duties, requirements, and compensation for nearly all the employees referenced in the SAC, including Plaintiff herself. (*Id.* ¶¶ 28-36, 40-55, 59-75.) Considering the above, the Court concludes the SAC contains sufficient allegations to plausibly suggest

---

controlled the employee and her work site. (Doc. 39 at 5.) But this is wrong. Although many of the factors overlap, the economic-reality test applies in the Fair Labor Standards Act context, and the common law agency test is used in Title VII disputes. *Glob. Horizons, Inc.*, 915 F.3d at 638-39 (rejecting economic-reality test in Title VII context).

the existence of a joint employment relationship between Defendants Air Liquide, Guidant, and Icon.

Nonetheless, "even if a joint-employment relationship exists, one joint employer is not automatically liable for the actions of the other." *Glob. Horizons, Inc.*, 915 F.3d at 641. For liability to extend to the joint employer, the plaintiff must allege, and ultimately prove, "the defendant employer knew or should have known about the other employer's conduct and failed to undertake prompt corrective measures within its control." *Id.* (quotations and citation omitted) This means Guidant may only be liable as a joint employer if Plaintiff alleges it knew or should have known of the alleged discriminatory acts and failed to effectively redress those acts.

The SAC alleges that Guidant hired Thompson and Hull, the employees responsible for the purportedly discriminatory conduct. (Doc. 35 ¶¶ 28-36.) Moreover, Plaintiff asserts "Hull told Rose that he will forward her complaints to Air Liquide and Guidant who will inform her staffing agency." (*Id.* ¶ 121; *see also id.* ¶¶ 130-31.) Lastly, a Guidant employee scheduled a meeting to address Plaintiff's retaliation and discrimination complaints about Thompson and Kysar. (*Id.* ¶ 166.) At the meeting, Guidant employees questioned Plaintiff about "her complaints of Thompson's sexual harassment and racial discrimination and Kysar's retaliation." (*Id.* ¶¶ 170-71.) And Plaintiff alleges the discriminatory and retaliatory conduct persisted. (*Id.* ¶¶ 174-78, 180-91, 212-18.) Therefore, Plaintiff has plausibly alleged that Guidant knew of the alleged discriminatory acts and failed to redress them, such that it may be held liable as a joint employer. The Court declines to dismiss Plaintiff's Title VII claims against Guidant under the joint employer doctrine.

## 2.    Hostile Work Environment: Counts 1, 3, and 4

Defendants seek dismissal of Plaintiff's hostile work environment claims (Counts 1, 3, and 4).[3] (Doc. 38 at 6-8; Doc. 39 at 7-9; Doc. 40 at 5-8.) A hostile work environment violates Title VII's guarantee of "the right to work in an environment free from

---

[3] Count 1 alleges a hostile work environment based on sexual harassment/discrimination in violation of Title VII; Count 3 asserts a hostile work environment based on associational racial discrimination in violation of Title VII; and Count 4 claims a hostile work environment under Section 1981. (Doc. 35 ¶¶ 271-88, 297-330.)

discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). To state a claim for hostile work environment, a plaintiff must allege that (1) she was subjected to verbal or physical conduct because of her race or sex, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *Manatt*, 339 F.3d at 798 (quotations and citation omitted).

### a.    Failure to Exhaust Administrative Remedies

Defendants Guidant and Icon argue Count 3 should be dismissed because Plaintiff has not exhausted her administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 39 at 6-7; Doc. 40 at 5-8.) Title VII requires a plaintiff to exhaust all administrative remedies before filing a civil action. *See Paige v. California*, 102 F.3d 1035, 1041 (9th Cir. 1996). Generally, "[a]llegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust." *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001). But a federal court may nonetheless consider the new allegations if they are "like or reasonably related to the allegations contained in the EEOC charge." *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (quotations and citations omitted). To determine this, "the court inquires whether the original EEOC investigation would have encompassed the additional charges." *Id.* at 1476. Courts are to construe a plaintiff's EEOC charge "with the utmost liberality." *Paige*, 102 F.3d at 1041 (quotations and citation omitted).

Plaintiff's EEOC charges against Guidant and Icon broadly stated, "On or around August 8, 2022, I informed Dick Hull who informed [Guidant and Icon] of race-based discrimination" and that she believed Guidant and Icon "discriminated against me because of my race, White." (Doc. 35-1 at 17, 19.) In Plaintiff's EEOC charge against Air Liquide, however, she alleged, "On or around August 8, 2022, Thompson made a comment stating my daughter was a 'mutt.' I believe Thompson's comment to be discriminatory and in reference to my race. Thompson is aware that I am White and that my daughter is mixed-race." (*Id.* at 11, 15.) While Plaintiff did not expressly reference her bi-racial

daughter and Thompson's derogatory comment in her charges against Guidant and Icon, this omission was not necessarily fatal.

"Whether a plaintiff in a Title VII action has timely exhausted her administrative remedies is an affirmative defense," that "the defendant bears the burden of pleading and proving." *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009) (cleaned up). And because this affirmative defense is raised in a Rule 12(b)(6) motion, dismissal is proper only "in the rare event that a failure to exhaust is clear on the face of the complaint." *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 909 n.6 (9th Cir. 2020) (quotations and citation omitted). In this case, it is not clear on the face of the SAC that Plaintiff failed to exhaust her administrative remedies, as an investigation into the events that transpired on August 8, 2022, could reveal the allegations supporting Plaintiff's associational discrimination claim in Count 3. Therefore, the Court will not dismiss Count 3 for failure to exhaust her administrative remedies at this stage.

### b.    Failure to State a Claim

### i.    Severe and Pervasive Conduct

Defendants also argue that Plaintiff's hostile work environment claims fail because Plaintiff does not allege that she was subject to severe or pervasive harassment. (Doc. 38 at 7; Doc. 39 at 8.)

In assessing whether the conduct was sufficiently severe or pervasive to violate Title VII, courts evaluate the totality of the circumstances. *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001). A work environment is sufficiently hostile if the plaintiff alleges and ultimately proves that the "hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994). A plaintiff must demonstrate the work environment was both subjectively and objectively hostile. *Nichols*, 256 F.3d at 871-72. In assessing objective hostility, courts employ a variety of factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

1    and whether it unreasonably interferes with an employee's work performance." *Harris v.*

2    *Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

3                            **1.    Sexual Harassment: Count 1**

4            As to Count 1, Plaintiff alleges Defendants subjected her to a hostile work

5    environment because she was sexually harassed and discriminated against by her

6    supervisor, Thompson. (Doc. 35 ¶¶ 94-110.) Thompson's behavior included: commenting

7    "we can party" to Plaintiff with sexual undertones (*Id.* ¶ 94); physically poking, jabbing,

8    or elbowing Plaintiff two to three times per day over the course of ten workdays and

9    causing her breasts to shake (*Id.* ¶ 95); making sexualized comments to Plaintiff about his

10   girlfriend and "sexy Budweiser girls" (*Id.* ¶ 96); and ordering Plaintiff to do something

11   with "what she perceived to be a sexually sadistic 'wife beater' face" (*Id.* ¶ 97). Plaintiff

12   also details a meeting in Thompson's office where she felt uncomfortable "being alone

13   with Thompson . . . with the door shut." (*Id.* ¶ 101.) In this meeting, Thompson "harassed

14   Rose by falsely accusing her of bad behavior and demanded that she do things 'his way'

15   or she would be terminated." (*Id.* ¶ 104.) As alleged in the SAC, Thompson required

16   Plaintiff to fist bump him over ten times during this meeting, which made her feel "like she

17   was a fist-bump hostage" and caused Plaintiff severe emotional distress. (*Id.* ¶¶ 104, 108,

18   283.)

19           Accepting these allegations as true, Plaintiff has sufficiently alleged both subjective

20   and objective hostility to satisfy the "severe and pervasive" element of her hostile work

21   environment claim. The SAC recounts in great detail Thompson's purportedly offensive

22   touching and comments to Plaintiff based on her sex and the emotional effect it had on her.

23   (*See, e.g.*, *id.* ¶¶ 94-110, 132-36, 275-83.) This is sufficient to allege Thompson's conduct

24   was severe and pervasive such that it interfered with Plaintiff's work performance. Indeed,

25   courts have found objective hostility adequately pleaded under circumstances far less

26   indicative of severity. *See, e.g.*, *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 981 (9th

27   Cir. 2023) (holding that "'sexually graphic, violently misogynistic' music [is] one form of

28   harassment that can pollute a workplace and give rise to a Title VII claim"); *Landucci v.*

1   *State Farm Ins. Co.*, 65 F. Supp. 3d 694, 704-05 (N.D. Cal. 2014) (stating that a hostile

2   work environment claim was plausibly alleged where plaintiff alleged that her supervisor

3   "commented on [her] choice of clothing several times while not commenting on the

4   clothing of male employees" and "treated [her] completely differently than her male

5   co-workers by consistently and excessively micromanaging her every step and criticizing

6   her work nonstop"); *Rico v. Jones Lang LaSalle Americas, Inc.*, No. CV 14-1322-GHK-

7   JEMX, 2014 WL 1512190, at *2-3 (C.D. Cal. Apr. 16, 2014) (stating that allegations of

8   negative performance reviews, criticism, and demeaning comments related to her

9   pregnancy "taken together, suggest at least a possibility that [her supervisor] engaged in a

10  pattern of harassing conduct toward [p]laintiff based on her pregnancy" and thus were

11  "sufficiently severe" to plausibly allege harassment).

12  ## 2.      Racial Discrimination: Counts 3 and 4

13          Plaintiff also brings Title VII and Section 1981 claims for racial discrimination by

14  association. (Doc. 35 ¶¶ 297-330.) In Counts 3 and 4, Plaintiff alleges "Thompson

15  subjected Plaintiff to unwelcome and severe insults, verbal comments, and racial epithets

16  regarding Plaintiff's bi-racial (black and white) daughter." (*Id.* ¶¶ 301, 318.) The

17  purportedly discriminatory conduct occurred when Thompson referred to Plaintiff's

18  daughter as a "mutt" after Plaintiff shared her daughter's adoption story, identifying her

19  daughter as bi-racial. (*Id.* ¶¶ 133-34.) According to Plaintiff, this insulting comment was

20  discriminatory and intended "to hurt her deeply in retaliation for her reporting

21  [Thompson's] conduct to Hull." (*Id.* ¶ 135.)

22          While the Court rebukes such disparaging remarks, Title VII is not a general civility

23  code. *Brooks v. City of San Mateo*, 229 F.3d 917, 927 (9th Cir. 2000) (quotations and

24  citation omitted). Indeed, Title VII is not violated by "simple teasing, offhand comments,

25  [or] isolated incidents (unless extremely serious)," nor "[m]ere utterance of an ethnic or

26  racial epithet which engenders offensive feelings in an employee." *Faragher v. City of*

27  *Boca Raton*, 524 U.S. 775, 787-88 (1998) (cleaned up). Plaintiff alleges a single racial

28  epithet that deeply offended her—for good reason. But an isolated offensive comment is

1  insufficient to support a hostile work environment claim for racial discrimination under

2  Title VII or Section 1981. Therefore, Plaintiff's racial discrimination claims (Counts 3 and

3  4) will be dismissed.[4]

4                                    ii.    **Employer Liability**

5          As to Plaintiff's sexual harassment claim, Air Liquide and Guidant argue dismissal

6  is warranted because Plaintiff has not alleged a theory of employer liability. (Doc. 38 at 8;

7  Doc. 39 at 8-9.) Once a plaintiff alleges a *prima facie* case for a hostile work environment,

8  the analysis shifts to liability. *See Steiner*, 25 F.3d at 1463. An employer's liability turns

9  on whether the alleged harasser is a supervisor versus a coworker. *See McGinest v. GTE*

10 *Serv. Corp.*, 360 F.3d 1103, 1119 (9th Cir. 2004). An employer is vicariously liable for a

11 hostile work environment created by a supervisor. *Id.* But, if the harasser is a coworker, an

12 employer may be liable "if it knew or should have known about the misconduct and failed

13 to take prompt and effective remedial action." *Westendorf v. W. Coast Contractors of Nev.,*

14 *Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (quotations and citation omitted).

15         Defendants argue Plaintiff's hostile work environment claims fail because "Icon and

16 Air Liquide took prompt, remedial action upon receiving Plaintiff's complaint" by firing

17 Thompson. (Doc. 38 at 8; Doc. 39 at 8-9.) Thus, Defendants appear to argue that Plaintiff

18 has failed to allege a theory of employer liability for harassment by a coworker. But the

19 SAC is replete with allegations that Thompson was Plaintiff's supervisor. (*See, e.g.*,

20 Doc. 35 ¶ 17 ("Both Thompson and Hull were Rose's Immediate Supervisors."); ¶ 78

21 ("Hull delegated to Thompson the task of supervising Rose . . ."); ¶ 81 ("Rose believed

22 that Hull and Thompson were her immediate supervisor[s]"); ¶ 112 ("Rose . . . protested

23 Thompson being her supervisor based on his conduct.").)

24         A supervisor is a person who can take tangible employment actions against an

25 employee, including effecting "significant change in employment status, such as hiring,

26 firing, failing to promote, reassignment with significantly different responsibilities, or a

---

27 [4] Dismissal of Count 4 is also appropriate because Plaintiff fails to allege but-for
28 causation—that is, "but for race, [Plaintiff] would not have suffered the loss of a legally
protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327,
341 (2020).

decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (citation and quotations omitted). Plaintiff alleges "Air Liquide and Guidant empowered Hull and Thompson to take tangible employment actions," and "Hull . . . empowered [Thompson] to take tangible employment actions regarding Rose." (Doc. 35 ¶¶ 77-78.) Defendants do not refute these allegations or otherwise argue that Thompson was not Plaintiff's supervisor. And even if Thompson were merely Plaintiff's co-worker, the SAC could be construed as alleging that Defendants' remedial action, *i.e.*, terminating Thompson, was ineffective because it created a retaliatory work environment. (*See id.* ¶ 281.)

Therefore, the Court will deny Defendants' motion to dismiss as to Count 1 on this basis.

### 3. Disparate Treatment: Count 2

Defendants seek dismissal of Plaintiff's disparate treatment claim. (Doc. 38 at 8-9; Doc. 39 at 9-10.) Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (cleaned up). "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Id.* (citation and quotations omitted). To state a claim for disparate treatment, a plaintiff must allege: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class did not suffer similar adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Defendants dispute only the third element, arguing Plaintiff has not and cannot plausibly allege she suffered an adverse employment action. (Doc. 38 at 8-9; Doc. 39 at 9-10.) According to Defendants, Plaintiff voluntarily resigned, and her remaining allegations cannot support a claim that she was constructively discharged. (*Id.*)

The Ninth Circuit broadly defines an "adverse employment action" as "any action 'reasonably likely to deter employees from engaging in protected activity.'" *Pardi v.*

*Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) (quoting *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)); *see also Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007). A constructive discharge—if proven—constitutes an adverse employment action. *Jordan v. Clark*, 847 F.2d 1368, 1377 n.10 (9th Cir. 1988). Constructive discharge occurs "when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Poland*, 494 F.3d at 1184 (quoting *Brooks*, 229 F.3d at 930). Generally, assessing whether a constructive discharge has occurred involves factual questions left to the trier of fact. *See Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987). If, however, a plaintiff alleges a "single isolated instance" of employment discrimination, such allegations alone are insufficient to support a finding of constructive discharge as a matter of law. *Id.* (quotations and citation omitted).

Plaintiff asserts she is a female, and she was "highly qualified for her position." (Doc. 35 ¶¶ 91-93.) She further alleges that Defendants and their employees engaged in a pattern of repeated harassment and discrimination against Plaintiff, culminating in her termination and/or constructive discharge. For example, Plaintiff alleges Thompson sexually harassed her through a series of offensive comments, physical contact, and humiliating subjugation. (*Id.* ¶¶ 94-136.) Plaintiff avers that after reporting Thompson, she was subjected to retaliatory conduct from other employees. (*Id.* ¶¶ 149-61, 174-77.) Plaintiff also states Defendants concocted a scheme to "try to cause Rose to quit" which involved: (1) spreading falsehoods about her arriving to work late and not completing her work on time; (2) forcing her to work manual labor in an unairconditioned train cart during an Arizona excessive heat warning; and (3) screaming at her in front of other employees and executives. (*Id.* ¶¶ 178, 180-89, 191, 214-18.) Plaintiff alleges "Defendants' decision to terminate and/or release Plaintiff from her assignment was motivated by her sex," and "Defendants did not terminate or otherwise discipline any of the male coworkers who continually left work early and engaged in similar or worse conduct than that alleged by

1 Plaintiff." (*Id.* ¶¶ 292-93.)

2 Deciding whether these practices were, in fact, so egregious that Plaintiff was forced

3 to resign is beyond the scope of the Court's inquiry for assessing a Rule 12(b)(6) motion.

4 But, accepting these allegations as true, Plaintiff has stated a plausible constructive

5 discharge claim—and "[i]f shown, constructive discharge is an adverse employment

6 action." *Jordan*, 847 F.2d at 1377 n.10. The Court will deny Defendants' motions to

7 dismiss Count 2.

8 ### 4.    Retaliation: Counts 5, 6, 7, 8, and 9

9 Defendants also seek dismissal of Plaintiff's retaliation claims (Counts 5-9).

10 (Doc. 38 at 9-10; Doc. 39 at 10-11.) "To establish a *prima facie* case of retaliation, a

11 plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and

12 (3) a causal link between the protected activity and the adverse employment action."

13 *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006). Temporal

14 proximity between the protected action and the employment decision can give rise to an

15 inference of causation. *Id.* at 1035. Conduct that falls under the umbrella of "protected

16 activities" includes filing a charge or complaint, testifying about an employer's alleged

17 unlawful practices, or "engaging in other activity intended to oppose an employer's

18 discriminatory practices." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185,

19 1197 (9th Cir. 2003) (cleaned up).

20 Plaintiff brings five retaliation claims. (Doc. 35 ¶¶ 331-406.) In the first four

21 asserted against all Defendants, Plaintiff alleges that she engaged in the protected activity

22 of reporting sexual harassment, discrimination, and retaliation, and that, as a result, she

23 was subject to further retaliatory conduct which has deprived her of "equal employment

24 opportunities" and resulted in her termination. (*Id.* ¶¶ 331-93.) As to these counts,

25 Defendants argue Plaintiff cannot show she suffered an adverse employment action

26 because she voluntarily resigned and has not sufficiently alleged constructive discharge.

27 (Doc. 38 at 9-10; Doc. 39 at 10-11.) But for the reasons already provided, the Court finds

28 Plaintiff has sufficiently alleged she was constructively discharged. Therefore, those

allegations satisfy the "adverse employment action" element for Plaintiffs' retaliation claims. *Jordan*, 847 F.2d at 1377 n.10.

Count 9 is asserted solely against Air Liquide. (Doc. 35 ¶ 394.) Therein, Plaintiff alleges she was subject to a retaliatory lawsuit for purportedly violating Arizona and Delaware trade secret laws. (*Id.* ¶¶ 397-400.) Air Liquide argues Count 9 should be dismissed because it had a legitimate, non-retaliatory reason for filing the lawsuit—that reason being Plaintiff's illegal downloading of the company's confidential and proprietary information. (Doc. 38 at 10.) But the Court will not inquire into Air Liquide's alleged non-retaliatory reasons for suing Plaintiff at the motion to dismiss stage. The SAC contains sufficient well-pled allegations that Air Liquide's "non-retaliatory reason" for filing the lawsuit was pretextual. (Doc. 35 ¶¶ 242-68.) Accepting those allegations as true, the Court will deny Defendants' motions to dismiss Plaintiff's retaliation claims on this basis.

### 5.    Constructive Discharge: Count 10

Defendants also seek to dismiss Count 10. (Doc. 38 at 10; Doc. 39 at 11; Doc. 40 at 12.) To the extent Plaintiff asserts Count 10 as a standalone claim, Defendants argue it should be dismissed because it is not cognizable. (*Id.*)

Defendants are partially correct. Under Arizona law, constructive discharge is not a standalone tort. *See Peterson v. City of Surprise*, 244 Ariz. 247, 250 (App. 2018). Rather, to prevail on a constructive discharge claim, a plaintiff must also successfully plead a discrimination claim. *Federico v. Dejoy*, No. CV-22-00706-PHX-DJH, 2023 WL 3388848, at *7 (D. Ariz. May 11, 2023). In this case, Plaintiff asserts constructive discharge under Title VII and not as a standalone claim. (Doc. 35 ¶¶ 407-13.)

To survive a motion to dismiss, a plaintiff bringing a constructive discharge claim must allege facts demonstrating that her "working conditions [had] become so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). "[A] plaintiff alleging a constructive discharge must show some 'aggravating factors,' such as a 'continuous pattern of discriminatory treatment.'" *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990) (quotations

and citation omitted). Although "a single isolated incident is insufficient as a matter of law to support a finding of constructive discharge," *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1411-12 (9th Cir. 1996) (citation omitted), "[courts] have upheld factual findings of constructive discharge when the plaintiff was subjected to incidents of differential treatment over a period of months or years." *Watson*, 823 F.2d at 361.

Plaintiff's constructive discharge claim is premised on her allegations of sex discrimination. (Doc. 35 ¶¶ 190, 230, 232, 235, 353, 407-13.) The SAC provides in copious detail the alleged sexual harassment and disparate treatment Plaintiff endured over the three months Plaintiff worked for Defendants. As this Court already explained in relation to Plaintiff's disparate treatment and retaliation claims, these allegations are sufficient to state a plausible claim for constructive discharge. Accordingly, the Court will deny Defendants' motions as to Count 10.

### 6.    Third-Party Interference: Count 11

Next, Air Liquide and Guidant contend Plaintiff's third-party interference with employment opportunities claim fails because they cannot simultaneously be her employer and a third party interfering with employment. (Doc. 38 at 10-11; Doc. 39 at 11-12.)

The Ninth Circuit has recognized that "an entity that is not the direct employer of a Title VII plaintiff nevertheless may be liable if it 'interferes with an individual's employment opportunities with another employer.'" *Ass'n of Mexican-Am. Educators*, 231 F.3d at 580 (quoting *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021 (9th Cir. 1983)). For the third party to be liable, however, it must have "discriminated against and interfered with the employees' relationship with their employers." *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 931 (9th Cir. 2003).

Plaintiff alleges that Air Liquide and Guidant, through their agents and employees, discriminated against Plaintiff by subjecting her to offensive and harassing conduct and terminating her based on her sex. (Doc. 35 ¶¶ 273-78, 292.) Plaintiff further claims that after she was terminated, "[n]either ICON nor Guidant ever communicated with [her] again or provided her with a new job" and that "ICON never posted any Arizona job positions to

1    this day," nor "protested Rose's termination to Air Liquide or tried to get her job back."

2    (*Id.* ¶ 241.) If the trier of fact ultimately determines that Air Liquide or Guidant did not

3    directly employ Plaintiff, then Defendants may nonetheless be liable under Plaintiff's

4    third-party interference theory by discriminately interfering with her employment

5    relationship with Icon. That Plaintiff's claims may be inconsistent is of no consequence, as

6    "[a] party may state as many separate claims or defenses as it has, regardless of

7    consistency." Fed. R. Civ. P. 8(d)(3).

8         Therefore, the Court will deny Defendants' motions as to Count 11.

9    **B.    State Law Claims**

10        **1.    Battery, Common Law Assault and IIED: Counts 12, 13 and 14**

11        Plaintiff also asserts claims for battery and common law assault against Air Liquide

12   and Guidant and a claim for intentional infliction of emotional distress ("IIED") against all

13   Defendants. (Doc. 35 ¶¶ 422, 434, 441.)

14        **a.    Within the Scope of Employment**

15        Defendants argue the Court should dismiss these claims because Thompson and

16   Hull's purportedly tortious conduct occurred outside the scope of their employment, and

17   therefore, Defendants cannot be held vicariously liable for their acts. (Doc. 38 at 11-12;

18   Doc. 39 at 12-13.)

19        Under the doctrine of *respondeat superior*, an employer may be held vicariously

20   liable for the "negligent or tortious acts of its employee acting within the scope and course

21   of employment." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Tr. of Phoenix,*

22   *Inc.*, 197 Ariz. 535, 540 (App. 2000). An employee's conduct is "within the scope [of

23   employment] if it is the kind the employee is employed to perform, it occurs within the

24   authorized time and space limits, and furthers the employer's business even if the employer

25   has expressly forbidden it." *Id.*[5]

26   ─────────────────────
     [5] Air Liquide and Guidant state: "The issue of whether an employee's tort is within the

27   scope of employment is a question of law." (Doc. 38 at 11; Doc. 39 at 13.) But this is
     incorrect. "Generally, whether an employee's conduct is within the course and scope of

28   employment is a question of fact for the jury." *Doe v. Roman Cath. Church of the Diocese*
     *of Phoenix*, 255 Ariz. 483, 491 (App. 2023). It is only a question of law "if the undisputed
     facts indicate that the conduct was clearly outside the scope of employment." *Smith v. Am.*

Air Liquide and Guidant rely on *Smith*, 179 Ariz. 131 (1994), for the proposition that an employee's sexual harassment of another employee is not within the scope of employment as a matter of law. (Doc. 38 at 12; Doc. 39 at 13.) This is not an accurate representation of the caselaw. In *Smith*, the Arizona Court of Appeals determined that an employee's sexual harassment of another employee was outside the scope of employment because the undisputed facts demonstrated that the harassment "was neither the kind of activity for which he was hired nor was it actuated, even in part, by a desire to serve [the employer]." 179 Ariz. at 135. The court further held that "no evidence exists from which a reasonable juror could conclude that [the employer] knew about [the manager]'s sexual misconduct and ratified it," because the plaintiff "did not report the harassment or assaults to her own immediate supervisors." *Id.* at 137. The court never held that sexual harassment cannot occur within the scope of employment as a matter of law. Indeed, the Arizona Supreme Court rejected such a reading of *Smith* three years later. *See State, Dep't of Admin. v. Schallock*, 189 Ariz. 250, 256 (1997) ("The language of *Smith*, standing alone, would mean that an employer is never vicariously liable for an intentional tort. We believe this sweeps much too broadly.").

Relying on a rejected interpretation of *Smith*, Air Liquide and Guidant misstate the relevant inquiry. A plaintiff need not allege that the tort itself was in furtherance of the employer's business, but rather, that "the service itself in which the tortious act was done was within the ordinary course of such business." *Id.* at 260 (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1351-52 (4th Cir. 1995)). And this requires inquiry into "when the act took place, where it took place, and whether it was foreseeable." *Id.* (citation omitted).

Plaintiff alleges Defendants are vicariously liable for the tortious acts of their employees because they were aware of Hull and Thompson's intentional, offensive touching and egregious behaviors. (Doc. 35 ¶¶ 425-30, 436-40, 443-47.) Plaintiff reported these incidents to Air Liquide and Guidant employees, and both defendants were notified

_____

*Express Travel Related Servs. Co.*, 179 Ariz. 131, 136 (App. 1994); *see also Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013, 1022 n. 3 (D. Ariz. 2011) (stating same).

of a meeting held to discuss Plaintiff's complaints. (*Id.* ¶¶ 166, 169-70.) Moreover, Plaintiff alleges each tortious incident occurred onsite, during working hours, and while Hull and Thompson served as Plaintiff's supervisors. (*See generally id.* ¶¶ 94-97, 101-08, 133, 178, 180-91, 214-18.) Plaintiff further asserts that Defendants' failure to take effective remedial action amounts to ratification of the employees' tortious conduct. (*Id.* ¶¶ 426, 439, 444.)

Taking these allegations as true, which the Court must, Plaintiff has alleged a plausible legal theory that Hull and Thompson were acting within the scope of their employment when the alleged tortious conduct occurred.

### b.    Preempted by Title VII

All Defendants argue that Plaintiff's claims for intentional and negligent infliction of emotional distress are preempted by Title VII. (Doc. 38 at 16; Doc. 39 at 17-18; Doc. 40 at 13-14.) The United States Supreme Court has deemed Title VII as the "exclusive, pre-emptive administrative and judicial scheme [available] for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976). But—as *pro se* Plaintiff correctly noted at oral argument—the preemptive power articulated in *Brown* applies only to federal employees. *Sommatino v. United States*, 255 F.3d 704, 711 (9th Cir. 2001) ("Title VII . . . provides the exclusive, pre-emptive remedy for *federal employees* seeking to redress employment discrimination.") (emphasis added). This case does not involve federal employment, and Defendants have cited no authority that *Brown*'s holding extends to private sector employees. Therefore, Counts 14 and 15 are not preempted by Title VII.

### c.    Failure to State a Claim

Air Liquide and Guidant also move to dismiss Plaintiff's IIED claim for failing to allege any Defendants' conduct was "extreme and outrageous" (Doc. 38 at 12-13; Doc. 39 at 13-14.) The Court agrees with Defendants. Even assuming, for purposes of these motions only, that Hull and Thompson's conduct was within the scope of their employment, Plaintiff nonetheless fails to allege their conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554 (App. 1995) (citation omitted). The Court will dismiss Count 14 because Plaintiff fails to state a plausible claim for relief.

### 2.    Negligence: Counts 15 and 16

#### a.    Preempted by Arizona Workers Compensation Laws

Defendants next argue Plaintiff's negligence claims (Counts 15-16) should be dismissed because they are preempted by Arizona's workers compensation laws. (Doc. 38 at 14-15; Doc. 39 at 15-16; Doc. 40 at 12-13.) Count 15 asserts "gross negligence/negligence" against Defendants for breaching their "duty of care not to cause her emotional distress." (Doc. 35 ¶¶ 449-54.) In Count 16, Plaintiff asserts negligent hiring, retention, and supervision against Defendants in connection with employing agents Thompson, Hull, Kysar, and White, who injured Plaintiff. (*Id.* ¶¶ 455-64.)

Defendants correctly assert that Arizona's workers compensation laws generally provide the exclusive remedy for negligence claims against an employer. *See* A.R.S. § 23-906(A) (providing exclusive remedy for injury or death of an employee); *see also Mosakowski v. PSS World Med., Inc.*, 329 F. Supp. 2d 1112, 1131 (D. Ariz. 2003) ("Arizona law precludes an employee from bringing a tort action based on negligent hiring and negligent retention against their employer . . . ."). But those very laws also require employers to provide notice to employees that, absent an objection, the employees accept workers compensation as their exclusive remedy for any injury. A.R.S. § 23-906(D). If an employer fails to provide this notice, then the employee's remedies are not limited to the statutory relief, and the employee may choose "to accept compensation" or "maintain other action against the employer" if injured. *Id.*(E); *see Galloway v. Vanderpool*, 205 Ariz. 252, 254 (2003) ("If an employer fails to provide the required notice, an employee is not deemed to have accepted compensation and retains the right to elect to pursue a statutory or common law remedy after his injury.").

Plaintiff alleges Defendants never provided notice of Arizona's workers compensation laws in a conspicuous place or provided the requisite forms for her to reject

workers compensation as her exclusive remedy. (Doc. 35 ¶¶ 85, 432, 438, 448.) Aside from claiming Plaintiff's notice argument is "irrelevant" (Doc. 49 at 9; Doc. 50 at 8), Defendants do not challenge the sufficiency of these allegations. Because Plaintiff alleges her negligence claims are not preempted by Arizona's workers compensation laws, the Court will not dismiss Counts 15 and 16 on this basis.

### b.    Failure to State a Claim

Defendants contend Count 16 should be dismissed for the additional reason that Plaintiff fails to state a claim for relief. (Doc. 38 at 15-16; Doc. 39 at 16-17.) A negligent hiring, supervision, and retention claim "arises from an employer's breach of its own, independent duty of care." *Roaf v. Stephen S. Rebuck Consulting, LLC*, 550 P.3d 173, 178 (Ariz. 2024). Arizona courts have applied the Restatement (Second) of Agency § 213 (1958) to assess these claims. *See, e.g.*, *Kassman v. Busfield Enters., Inc.*, 131 Ariz. 163, 166 (App. 1981); *Olson v. Staggs-Bilt Homes, Inc.*, 23 Ariz. 574, 577 (App. 1975). Under its terms, an employer may be liable for negligent hiring, retention, and supervision if it fails to make proper regulations; employs improper persons involving risk of harm to others; fails to supervise activity; or permits or fails to prevent negligent or other tortious conduct by employees or agents on the premises or with instrumentalities under the employer's control. Restatement (Second) of Agency § 213 (1958).

Plaintiff alleges she was employed by all Defendants who owed her a duty of care as her employer. (Doc. 35 ¶¶ 8, 52, 449-64.) She asserts Defendants breached their duty and were negligent as to each of the four grounds provided in § 213 of the Restatement. (*Id.* ¶¶ 8, 457-60.) Further, Plaintiff details the various reports, conversations, and meetings she initiated with Defendants to address the tortious conduct of Defendants' employees. (*Id.* ¶¶ 111-12, 116-21, 127, 136-47, 162-73, 223-26.) And lastly, Plaintiff asserts Defendants' remedial action was either nonexistent or ineffective. (*See id.*)

Therefore, Plaintiff has plausibly stated a claim for negligent hiring, retention, and supervision. The Court will deny Defendants' motions as to Counts 15 and 16.[6]

---

[6] Defendants argue Plaintiff's failure to respond to their arguments as to Counts 10-11 and 14-16 warrants dismissal of those claims. (Doc. 48 at 2; Doc. 49 at 11; Doc. 50 at 4.) After

### 3.    Fraud: Count 17

All Defendants argue Plaintiff's common law fraud claim should be dismissed for failure to state a claim. (Doc. 38 at 13-14; Doc. 39 at 14-15; Doc. 40 at 8-10.)

To maintain an action for fraud under Arizona law,

> [A] plaintiff must sufficiently plead: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury.

*Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003) (citations omitted). A claim for fraud is subject to the heightened pleading standards of Rule 9(b), where a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiff alleges that Defendants required her to sign a temporary work agreement which falsely represented her, Thompson, and Hull as independent contractors. (Doc. 35 ¶¶ 467-69.) She claims this false representation was made "to mitigate the risk of litigation" by convincing her that she was not entitled to protections under Title VII. (*Id.* ¶¶ 471-72.)

The Court will dismiss Count 17 because the SAC does not plead with particularity that Plaintiff relied on any of Defendants' representations. Plaintiff asserts that other employees—namely Kysar and Thompson—relied on these representations by believing they would not suffer any consequences for harassing or retaliating against Plaintiff since she lacked Title VII protections. (*Id.* ¶¶ 471-73.) But Plaintiff has not shown that *she* relied on these representations. Indeed, Plaintiff's SAC undermines her theory of fraud, as she is bringing claims under the very statutory protections Defendants purportedly induced her into believing she lacked. If anything, the SAC demonstrates a lack of reliance on Defendants' alleged representation. Therefore, Count 17 will be dismissed.[7]

---

reviewing her response, however, the Court finds that Plaintiff loosely addresses Defendants' arguments such that her opposition is not waived. (*See, e.g.*, Doc. 43 at 17 n.4, 37-40.) Because this Court is required to construe her pleadings liberally, *Hebbe*, 627 F.3d at 342, the Court declines to dismiss Counts 10-11 and 14-16 on this basis.

[7] Because Plaintiff fails to plead reliance, the Court need not address Defendants' other

### C.    Rule 8

Icon seeks dismissal of the SAC for failing to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure. (Doc. 40 at 2.) Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." *Id.*(d)(1). A complaint having the factual elements of a cause of action present but scattered throughout the complaint and not organized into a "short and plain statement of the claim" may be dismissed for failure to satisfy Rule 8(a). *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988).

Defendant's arguments are well taken. At over 474 paragraphs, spanning 100 pages, the SAC is replete with irrelevant narrative material in superfluous detail. In the same token, the Court is sympathetic to Plaintiff as a self-represented litigant. The Court will not dismiss the SAC on Rule 8 grounds, but Plaintiff is cautioned to take heed of these arguments. *Pro se* litigants are required to be familiar with and adhere to the rules of the Court. *Carter v. Comm'r of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986).

### D.    Leave to Amend

Plaintiff requests leave to amend. (Doc. 43 at 40.) Defendants oppose her request. (Doc. 48 at 4-5; Doc. 49 at 4-5; Doc. 50 at 9.) Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy in favor of allowing leave to amend must not only be heeded by the Court, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), it must also be applied with extreme liberality. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quotations and citation omitted). Factors that may justify denying a motion to amend are undue delay, bad faith or dilatory motive, futility of amendment, undue prejudice to the opposing party, and whether the plaintiff has previously amended his or her pleadings. *Foman*, 371 U.S. at 182; *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

arguments.

This case has been pending for eleven months and has yet to pass the pleading stage. Granting Plaintiff leave to amend and then entertaining another round of dismissal briefing would unduly prejudice Defendants' interests in finality. Moreover, this is Plaintiff's second amended complaint. At oral argument, Defendants' counsel represented to the Court that before Plaintiff amended her complaint, they conferred and thoroughly explained their objections, many of which are well taken. Plaintiff has not indicated in her briefs or at oral argument how any amendment would cure the deficiencies of her complaint as to the counts that fail to state a claim for relief. Considering the above, the Court will dismiss Counts 3, 4, 14, and 17 without leave to amend.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendants' Motions (Docs. 38, 39, 40) are **granted in part** and **denied in part**. Counts 3, 4, 14, and 17 are dismissed without leave to amend.

**IT IS FURTHER ORDERED** denying the Motions in all other respects.

**IT IS FURTHER ORDERED** that Defendants shall file an answer to the SAC no later than twenty-one (21) days from the date of this order.

**IT IS FINALLY ORDERED** that a Rule 16 scheduling conference will be set by separate order.

Dated this 14th day of February, 2025.

Michael T. Liburdi
United States District Judge